IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS INTERNATIONAL PROPERTY ASSOCIATES, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:07-CV-2099-K |
| HOERBIGER HOLDING AG, | § § | |
| Defendant/Counterclaimant, | § § | |
| v. | § § | |
| DAUBEN, INC. D/B/A TEXAS INTERNATIONAL PROPERTY ASSOCIATES AND JOEY DAUBEN A/K/A JOSEPH G. DAUBEN, | § § § § § | |
| Counterclaim Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Hoerbiger Holding AG's Motion for Partial Summary Judgment, filed September 19, 2008.  After review and consideration of the motion, response, reply, summary judgment record, and the applicable law, the court has determined that the motion should be **granted,** and all of Plaintiff's claims against it shall be **dismissed with prejudice.**  Further, Defendant is also entitled to judgment as a matter of law on its cyberpiracy claim against Counter-Defendants.

1

I.      **Factual and Procedural Background**

Defendant Hoerbiger Holding AG ("Hoerbiger") conducts business worldwide in the fields of compression technology, automation technology, drive technology, and actuator technology.  Hoerbiger owns and maintains various internet web sites, including but not limited to www.hoerbiger.com.  In connection with its business, Hoerbiger obtained a registration of the mark HOERBIGER from the United States Patent and Trademark Office on October 8, 2002.  Plaintiff and Counter-Defendant Texas International Property Associates ("TIPA") manages a portfolio of approximately 500,000 internet domain names that it uses to generate advertising revenues via click-through fees.  Counter-Defendant Joey Dauben ("Dauben") is the president and only employee of counter-Defendant Dauben, Inc., which does business as TIPA.

In early June 2007, Hoerbiger became aware of the horbiger.com domain name. At that time, the horbiger.com site provided access to various hyperlinks labeled Automation, Compressor, Business, Valve, Web Site, Motion Control, Actuators, Storage, Cylinder, Linear Actuators and Control Valves.  By clicking on the various hyperlinks, the user was taken to a series of sponsored results or advertising links related to the user's selection.  Although Hoerbiger asked TIPA to voluntarily transfer the horbiger.com domain name, TIPA refused to comply.

Hoerbiger then brought an action before an Administrative Panel of the World Intellectual Property Organization ("WIPO").  In its complaint filed with WIPO on June

2

27, 2007, Hoerbiger asserted that TIPA had registered the domain name horbiger.com in violation of Hoerbiger's 100-plus trademarks of HOERBIGER.  Hoerbiger therefore requested that the horbiger.com domain name be transferred to it.

In that proceeding, the WIPO panel concluded that Hoerbiger had met its burden of showing that the domain name should be transferred.  Specifically, it found that Hoerbiger had shown that the horbiger.com domain name was confusingly similar to its HOERBIGER trademarks; that TIPA had no rights or legitimate interests in respect to the horbiger.com domain name; and that TIPA had registered and was using the horbiger.com domain name in bad faith.  Accordingly, the WIPO panel ordered on October 19, 2007 that the horbiger.com domain name be transferred to Hoerbiger. Despite WIPO's ruling, TIPA did not transfer the disputed domain name to Hoerbiger.

Following the WIPO ruling, TIPA filed suit against Hoerbiger in Texas state court on November 15, 2007, claiming that Hoerbiger has no rights in the horbiger.com domain name, and asking the court to prevent the transfer of the domain name to Hoerbiger.  Hoerbiger then removed the case to this court on December 14, 2007, and answered TIPA's suit on December 21, 2007, joining Dauben, Inc. and Joey Dauben as counter-Defendants and adding counterclaims for federal trademark infringement, federal unfair competition, federal cyberpiracy, and federal trademark dilution against TIPA, Dauben, Inc. and Dauben (collectively, "counter-Defendants").  Hoerbiger also pleaded state law counterclaims against counter-Defendants for trademark infringement

3

and injury to business reputation or trade name.

On April 18, 2008, TIPA filed its First Amended Complaint.  Therein, TIPA asserted claims against Hoerbiger to prohibit transfer of the horbiger.com domain name, and also sought cancellation of Hoerbiger's federal trademark registration of the HOERBIGER mark.  TIPA also alleges fraudulent trademark registration, and various state law claims including conversion, trespass to property, and tortious interference with a contract and/or peaceful use or enjoyment of property.  Hoerbiger now moves for summary judgment on all of TIPA's claims, and further seeks summary judgment on its counterclaim for cyberpiracy against counter-Defendants.

## II.   Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54.  Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial.

4

*Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

### III.    Hoerbiger's Motion for Partial Summary Judgment

Hoerbiger contends on summary judgment that all of TIPA's claims against it should be dismissed with prejudice. Hoerbiger also seeks summary judgment against counter-Defendants on its federal cyber-piracy claim. For the following reasons, the court agrees that partial summary judgment is warranted, and grants Hoerbiger's motion. Each claim will be discussed below.

### A.    Anti-Cybersquatting Consumer Protection Act ("ACPA")

Hoerbiger first alleges that TIPA's registration of the horbiger.com domain name was done in bad faith for the purpose of "typosquatting" – using a domain name that oftentimes constitutes a typo or intentional misspelling of distinctive or famous names. *See Southern Co. v. Dauben, Inc.,* 2009 WL 1011183, *2 n.2, *citing Shields v. Zuccarini,* 254 F.3d 476, 483 (3d Cir.2001)*;Green v. Fornario,* 486 F.3d 100, 103 n. 5 (3d Cir.2007). Specifically, Hoerbiger contends that TIPA has violated the cyberpiracy provisions of the ACPA, 15 U.S.C. § 1125(d). The relevant portion of that statute provides:

> (1)(A)    A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person

(I)    has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii)    registers, traffics in, or uses a domain name that--

(I)    in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II)    in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III)    is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

To prevail on the merits of an ACPA claim, Hoerbiger must show that 1) its mark "is a distinctive or famous mark entitled to protection"; 2) TIPA's "domain names are 'identical or confusingly similar to' [Hoerbiger]'s mark"; and 3) TIPA "registered the domain names with the bad faith intent to profit from them." *See Shields,* 254 F.3d at 482 (*quoting* 15 U.S.C. § 1125(d)(1)(A)).

Addressing the first relevant factor, Hoerbiger contends that because its HOERBIGER mark is a federally registered mark, it is presumed to be distinctive. *See Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366, 378 (7th Cir.), *cert. denied,* 429 U.S. 830 (1976) (registration is *prima facie* evidence of registrant's ownership of mark); *March Madness Athletic Assn., L.L.C. v. Netfire, Inc.,* 162 F. Supp.2d 560, 568 (N.D. Tex. 2001) (same);   In addition to case law, Hoerbiger relies upon 15 U.S.C. § 1115(a), which states, in pertinent part, that:

6

> Any registration issued ... and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b) of this section, which might have been asserted if such mark had not been registered.

Further, Hoerbiger argues that the HOERBIGER mark has acquired distinctiveness through secondary meaning.  In support, Hoerbiger points to TIPA's use of the horbiger.com domain name to provide advertising links to automation and compression products.  Thus, it argues that TIPA intentionally copied the HOERBIGER mark, and that such proof is relevant to whether its mark has secondary meaning.  *See Sally Beauty Co., Inc. v. Beautyco, Inc.,* 304 F.3d 964, 977 (10th Cir. 2002) (proof of intentional copying relevant to issue of secondary meaning); *Stuart Hall Co., Inc. v. Ampad Corp.,* 51 F.3d 780, 789 (8th Cir. 1995) (deliberate copying of mark can contribute to finding of secondary meaning).

In response, TIPA argues primarily that the HOERBIGER mark is not distinctive because Hoerbiger is a surname.  The court finds this argument disingenuous, given that TIPA itself has used "Horbiger," a very similar misspelling of "Hoerbiger," in association with advertising links for automation and compression, a deliberate copying.  Even if Hoerbiger is a surname,  Hoerbiger has shown that it registered the mark, used it in connection with automation and compression, and that it has acquired secondary

meaning.   TIPA has not disputed this proof set forth by Hoerbiger.   Accordingly, Hoerbiger has established the first element of its ACPA claim, and shown that the HOERBIGER mark is distinctive.

Next, Hoerbiger must show that TIPA's horbiger.com domain name is "identical or confusingly similar" to the HOERBIGER mark.   It is undisputed that horbiger.com deletes the first "e" from Hoerbiger, and adds the extension ".com".   Other federal courts have stated that domain names that are substantially the same as a trademark are confusingly similar and create a presumption of confusion. *See People for the Ethical Treatment of Animals, Inc. v. Doughney,* 113 F. Supp.2d 915, 920 (E.D.Va.2000); *Shields v. Zuccarini,* 89 F. Supp.2d 634, 639 (E.D.Pa.2000), *aff'd,* 263 F.3d 359 (4th Cir. 2001); *OBH, Inc. v. Spotlight Magazine, Inc.,* 86 F. Supp.2d 176, 188 (W.D.N.Y.2000).   Further, the record shows that the domain name horbiger.com was deliberately used as a misspelling of Hoerbiger, given that the website found at horbiger.com provides advertising links for automation and compression, the same products offered by Hoerbiger.   TIPA has not provided any facts to dispute this evidence.   This proof provides further support for a finding that TIPA's horbiger.com domain name is identical or confusingly similar to the HOERBIGER mark.

With respect to the third element of its ACPA claim, Hoerbiger must set forth sufficient proof that TIPA registered and used the horbiger.com domain name with a bad faith intent to profit from Hoerbiger's mark.   Under the ACPA, a court may consider

8

nine non-exclusive factors when determining whether a defendant had a bad faith intent to profit. *TMI, Inc. v. Maxwell,* 368 F.3d 433, 436 (5th Cir. 2004). Those factors listed in the ACPA are:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;

> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time

of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(I).

These factors may be used by a court to conduct a bad faith analysis, but consideration of each and every factor is not required. *Virtual Works, Inc. v. Volkswagen of America, Inc.,* 238 F.3d 264, 269 (4th Cir. 2001). The first four factors, subsections (I)-(IV), are indicative of good faith, while the last five, subsections (V)-(IX), are indicative of bad faith. "There is no simple formula for evaluating and weighing these factors. For example, courts do not simply count up which party has more factors in its favor after the evidence is in." *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 234 (4th Cir.2002). "The factors are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit." *Lucas Nursery & Landscaping, Inc. v. Grosse,* 359 F.3d 806, 810 (6th Cir.2004).

The most important grounds for finding bad faith "'are the unique circumstances of th[e] case, which do not fit neatly into the specific factors enumerated by Congress, but may nevertheless be considered under the statute.'" *Virtual Works,* 238 F.3d at 268 (*quoting Sporty's Farm, L.L.C. v. Sportsman's Market, Inc.,* 202 F.3d 489, 499 (2d Cir.), *cert. denied,* 530 U.S. 1262 (2000)). Describing the analysis another way, other courts have emphasized that a bad faith determination under ACPA should be made with

10

regard to the totality of the circumstances.  *See, e.g. Virtual Works,* 238 F.3d at 270; *Domain Name Clearing Company, LLC v. F.C.F. Inc.,* 2001 WL 788975, **1 (4th Cir. 2001). Additionally, it should be mentioned that despite the "bad faith" factors, the ACPA provides a safe harbor where the court "determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  15 U.S.C. § 1125(d)(1)(B)(ii).

In support of its argument that TIPA used the horbiger.com domain name in bad faith, Hoerbiger argues that 1) TIPA has no intellectual property rights in the domain name; 2) the horbiger.com domain name is not a legal name used to identify TIPA or Dauben; 3) TIPA has not previously used the horbiger.com domain name in connection with the bona fide offering of goods or services; 4) TIPA was not using the horbiger.com domain name in connection with a bona fide offering of goods or services but solely for the purpose of generating advertising revenues; 5) TIPA's use of the horbiger.com domain is designed to divert traffic and generate advertising revenues by creating a likelihood of confusion; and 6) TIPA has registered over 500,000 domain names and is an active participant in a larger organizational structure that cybersquats and typosquats on trademarks. Additionally, the court notes that TIPA must have known that the horbiger.com misspelling of HOERBIGER was confusingly similar, given that TIPA was using that misspelling to provide advertising links for automation and compression products.

TIPA first responds to Hoerbiger's bad faith evidence by stating that it intends to hold the domain name "in the surname sense" to provide links to information about such persons.  However, the undisputed summary judgment proof shows that TIPA was not using the domain name for that purpose.  Rather, it was used to provide links related to automation and compression – products associated with the HOERBIGER mark.  TIPA also argues that it has registered numerous domain names because they are "valuable internet property," not because they were trademarked terms.  In the court's view, these facts also do not support TIPA's position that it acted in good faith.  If TIPA had been using the domain name to provide links unrelated to automation and compression, its activities would more easily comport with good faith.  However, TIPA was using the horbiger.com domain name to provide advertising links to automation and compression, products that are expressly associated with the  registered trademark at issue, which does not support TIPA's argument for good faith.

TIPA further points out that it has refused to sell the horbiger.com domain name and has never made an offer to sell the name.  The court agrees that this fact weighs somewhat against a finding of bad faith; however, the fact remains that TIPA was using the name for another source of monetary gain - generating click-through advertising revenues for links to automation and compression.

Next, TIPA argues that it is not a cybersquatter because its business model includes a policy of maintaining surnames and generic terms.  Specifically, it contends

that the non-trademark use of potential trademarks do not support a finding of bad faith.  The court is somewhat puzzled by this argument, since the summary judgment record shows that TIPA *was* using the horbiger.com domain name in its trademarked sense, namely to generate revenue in connection with automation and compression. TIPA also asserts that the ninth factor listed in the statute does not support bad faith, because the HOERBIGER mark is not famous or well-known to the general public. Here, the court agrees with TIPA that this factor weighs against bad faith.

Finally, TIPA claims that a finding of bad faith is precluded by the "fair use" defense, as found in 15 U.S.C. § 1115(b)(4), which provides a defense to infringement where:

> the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin.

TIPA fails to explain in detail how this exception to infringement applies to this case, other than to state that it was using horbiger as a surname.  The court disagrees, as the undisputed summary judgment record shows that TIPA was not using horbiger.com as a surname.  Rather, it was using the domain name to provide advertising links for automation and compression.  Therefore, the "fair use" defense does not prevent a finding of bad faith.

Here, the court finds that the totality of applicable facts presented must lead to

13

a finding that TIPA's use of the horbiger.com domain name constituted bad faith, based both upon the nine factors provided by the ACPA and the additional facts unique to this case.  Most significantly, since TIPA was using the domain to provide links related to automation and compression, it clearly knew that "horbiger" was a slight misspelling of Hoerbiger, a company dedicated to automation and compression.  By using the name as it did, TIPA was generating advertising revenues based upon the deliberate use of a confusingly similar name.  Further, when WIPO ruled that TIPA should transfer the domain name to Hoerbiger, TIPA refused to comply, instead protracting the issue by bringing this dispute.  TIPA's claim on summary judgment that it intended to use horbiger.com as a surname belies the factual record herein.  The court finds that there is no genuine issue of material fact with respect to Hoerbiger's ACPA claim, and will enter judgment for Hoerbiger thereon.

### B.      TIPA's Claims Against Hoerbiger

Hoerbiger also moves for summary judgment on TIPA's claims for fraudulent trademark registration, conversion, trespass to property, and tortious interference with a contract and/or peaceful use or enjoyment of property.

### 1.      Fraudulent Trademark Registration

TIPA brings two federal claims against Hoerbiger based upon the alleged fraudulent registration by Hoerbiger of its trademark shown in U.S. Reg. No. 2,629,876.  Specifically, TIPA asserts claims for 1) cancellation of the registration under 15 U.S.C.

14

§ 1119; and 2) damages pursuant to 15 U.S.C. § 1120.  With respect to these claims, TIPA alleges that Hoerbiger fraudulently registered the HOERBIGER mark because it did not disclose to the U.S. Patent and Trademark Office ("USPTO") that the English translation of HOERBIGER is Horbiger, which is primarily a surname.  Hoerbiger moves for summary judgment on this claim, arguing that it had no duty to disclose the English translation or that it knew that Horbiger is a surname.  Therefore, Hoerbiger maintains that its non-disclosure of this information cannot be considered fraudulent.

To prove fraudulent procurement of a trademark, a party must show: 1) the false representation regarding a material fact; 2) the registrant's knowledge or belief that the representation is false (scienter); 3) the intention to induce action or refraining from action in reliance on the misrepresentation; 4) reasonable reliance on the misrepresentation; and 5) damages proximately resulting from such reliance.  *United Phosporus, Ltd. v. Midland Fumigant, Inc.,* 205 F.3d 1219, 1226 (10th Cir. 2000); *San Juan Prods., Inc. v. San Juan Pools of Kansas, Inc.,* 849 F.2d 468, 473 (10th Cir. 1988); *King-Size, Inc. v. Frank's King Size Clothes, Inc.,* 547 F. Supp. 1138, 1166 (S. D. Tex. 1982). To succeed on such a claim, plaintiff must prove by clear and convincing evidence that Defendant made false statements with intent to deceive the USPTO.  *Meineke Discount Muffler v. Jaynes,* 999 F.2d 120, 126 (5th Cir.1993).

Although the parties have not specifically addressed the above elements in their briefing, it appears that TIPA is arguing that Hoerbiger's failure to translate Hoerbiger

into Horbiger (a surname) on its trademark application was an alleged false statement made with scienter, or intent to deceive.  The court disagrees.  Although the regulations require that any non-English wording be translated into English, TIPA offers no authority to support its proposition that Horbiger's omission equates to a fraudulent misrepresentation that would justify cancellation of the mark.  Moreover, as Horbiger points out, the USPTO carries the initial burden of determining that a proposed mark is a surname.  *In re Hutchinson Technology, Inc.,* 852 F.2d 552, 553 (Fed. Cir. 1988); *Application of Harris-Intertype Corp.,* 518 F.2d 629, 630-31 (Cust. & Pat. App. 1975). Because TIPA has not set forth sufficient evidence of either a false representation, or intent to deceive, the court will enter summary judgment for Hoerbiger on this claim.

### 2.    Conversion

To establish conversion of personal property, a plaintiff must prove that: 1) the plaintiff owned or had legal possession of the property or entitlement to possession; 2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; and 3) the plaintiff suffered injury. *United Mobile Networks, L.P. v. Deaton,* 939 S.W.2d 146, 147-48 (Tex.1997); *Lopez v. Lopez,* 271 S.W.3d 780, 784 (Tex. App. – Waco 2008, no pet. h.).  Hoerbiger argues that the summary judgment record shows that TIPA is not the owner of the horbiger.com domain name and has offered no evidence that it has the right to immediate possession of the domain name.  It further

16

states that it has not wrongfully exercised dominion and control over the domain name. In response, TIPA argues that by invoking the WIPO process, Hoerbiger has "locked" the domain name, thus committing conversion. The court disagrees. TIPA has set forth no evidence raising a material fact issue whether Hoerbiger improperly instigated the WIPO dispute concerning the horbiger.com domain name. This claim must also be dismissed.

### 3.    Trespass to Chattels

TIPA has also brought a state law claim against Hoerbiger for trespass to chattels. A trespass to chattels is a wrongful interference with or injury to property that causes actual damage to the property or deprives the owner of its use for a substantial period of time. *Armstrong v. Benavides,* 180 S.W.3d 359, 363 (Tex. App. – Dallas 2005, no pet. h.); *Omnibus Int'l, Inc. v. AT & T, Inc.,* 111 S.W.3d 818, 826 (Tex.App.-Dallas 2003, pet. granted, judgm't vacated w.r.m). For reasons similar to its conversion claim, this claim also fails. TIPA has produced no evidence on summary judgment of actual damage to the domain name, or that it is currently the owner of the name. The court will also dismiss this claim.

### 4.    Tortious Interference

TIPA's final state law claims are for tortious interference with a contract and peaceful use and enjoyment of property. Tortious interference with a contractual relationship requires a plaintiff to prove: 1) an existing contract subject to interference;

17

2) an intentional and willful act of interference; 3) proximate cause; and 4) actual damages. *Holloway v. Skinner,* 898 S.W.2d 793, 795-96 (Tex.1995); *Hood v. Edward D. Jones & Co., L.P.,* 277 S.W.3d 498, 501 (Tex. App. – El Paso 2009, pet. filed).  A cause of action for tortious interference with peaceful use and enjoyment of property is, in essence, a claim for intentional invasion of, or interference with, property rights.  *Ski River Development, Inc. v. McCalla,* 167 S.W.3d 121, 140 (Tex.App.-Waco 2005, no pet.); *Suprise v. DeKock,* 84 S.W.3d 378, 382-83 (Tex.App.-Corpus Christi 2002, no pet.). To prevail, a plaintiff must show that the defendant intentionally interfered with plaintiff's property rights. *Marrs and Smith Partnership v. D.K. Boyd Oil and Gas,* 223 S.W.3d 1, 21 (Tex. App. – El Paso 2005, rev. denied).

Hoerbiger argues on summary judgment that both of these claims must be dismissed because TIPA cannot show that it suffered damages resulting from Hoerbiger's efforts to gain ownership of the horbiger.com domain name.  In response, TIPA has presented no facts supporting its claim for damages due to alleged tortious interference. Therefore, this claim also fails, and will be dismissed.

## IV.    Posture of the Case Following Partial Summary Judgment

Following entry of this order, several of Hoerbiger's counterclaims remain for trial. They include federal trademark infringement, unfair competition, and trademark dilution.  Hoerbiger's state law claims for trademark infringement and injury to business reputation or trade name (Tex. Bus. & Com. Code § 16.29) are also still pending.

18

### V.     Conclusion

For the foregoing reasons, the court will enter summary judgment in favor of Hoerbiger on its counterclaim for cyberpiracy in violation of the ACPA.  All of TIPA's claims against Hoerbiger are also hereby **dismissed with prejudice.**  Judgment will be entered by separate document.

**SO ORDERED.**

Signed May 12th, 2009.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE

19